[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO DISCHARGE MECHANIC'S LIEN
FACTS
At all pertinent times and dates, the real property involved in this litigation was owned by either the plaintiff or its predecessor in title, Joseph Farricielli.
In 1992, Farricielli entered into an agreement with Quinnipiack Group, Inc. (Group), under the terms of which Group would operate a bulky waste disposal area on the property, paying to Farricielli a percentage of the fees collected by Group from those bringing bulk waste to the site.
To operate this facility, Group required large amounts of "clean fill" and "land cover," and between August 29, 1996 and October 25, 1996, the defendant furnished such material with total charges of $71,303.87 accruing.
In September 1996, the parcel was conveyed by quit claim deed from Farricielli to the plaintiff, of which corporation Farricielli is the president and part owner.
The defendant placed a mechanic's lien on the real property and objected to the plaintiff's application for discharge of the lien on the grounds that Farricielli was a part owner of the CT Page 6115 plaintiff corporation, was the sole owner of the real property prior to its conveyance to the plaintiff, and that he still has a financial interest in the property. None of these allegations were disputed by the plaintiff. At the hearing on this application the court questioned the relevance of these statements.
 I
The defendant introduced no evidence that the fill was provided to either the plaintiff or to Farricielli. In fact, the president of the defendant corporation testified that "Q Park", the name under which Group operated the disposal area, called him to order the material. And, as the invoice remained unpaid, he continued to call Q Park and never called Farricielli to express his concern or to demand payment.
Consequently, the defendant cannot prevail on a theory that Farricielli ordered the material for himself or for the plaintiff corporation.
 II
When the lack of proof cited above was pointed out to the defendant, it went on to make the argument that the agreement between Farricielli and Group was such a financial bonanza to the former and it afforded him such protection as to warrant the conclusion that Farricielli was really operating under the guise of Group and it was his alter ego.
Again, there was no evidence introduced to show any relationship between the two parties and the court cannot impose liability on Farricielli for driving a hard bargain financially or legally.
 III
The defendant's final argument was to the effect that it has a valid lien by virtue of its having provided material which improved the plaintiff's land, that the material and the subsequent improvement was "by consent of the owner of the lot being improved . . . or (by the consent) of some person having authority from or rightfully acting for the owner . . . ."
As noted above, no such persons have been identified, but the CT Page 6116 defendant argues Farricielli knew or should have known that Group would be filling in the disposal area and that this was a tacit consent to the defendant's furnishing of material.
The defendant relies on Torno Danaher, Inc. v. Covino,19 Conn. Sup. 55 (1952). There is nothing in this case which supports the defendant's position. In that case, the lien survived due to these factors:
 1. The defendant property owner knew of the work planned by the proposed tenant and approved sketches of the project;
 2. The project was consistent with the use for which the floor area was designed; and
 3. The owner had a permit which would enable him to utilize the premises for the same purpose as the tenant had planned.
In this case, no evidence supports the bald assertion that the property was improved by the defendant's material. In fact, there was a bald assertion by the plaintiff that the fill contaminated the property! But even if it did improve the property, there was no consent by the owner or agent. Further, the use of the material was incidental to the planned operation of the disposal area.
The court concludes that the plaintiff herein must prevail and the mechanic's lien is ordered dissolved.
 IV
The plaintiff seeks damages for the defendant's filing and failure to discharge, pursuant to Conn. Gen. Stat. § 49-51. The court finds this lien was filed without just cause, and the plaintiff is awarded counsel fees of $2,550 plus taxable costs.
Anthony V. DeMayo Judge Trial Referee